IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.     24-CR-0059-RJA-JJM

HADI MATAR,

Defendant.

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S PRETRIAL MOTIONS

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorneys, submits this response to the defendant's pretrial motions. For the reasons set forth below, the Court should deny the defendant's pretrial motions and grant the government's cross motion for reciprocal discovery.[1]

## BACKGROUND

The defendant is charged in a three-count indictment with attempting to provide material support to a designated foreign terrorist organization—that is, Hizballah—in violation of 18 U.S.C. § 2339B(a)(1); committing an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a)(1)(A); and providing material support to terrorists, in violation of 18 U.S.C. § 2339A. These charges stem from the defendant's

---

[1] The government reserves its right to supplement this memorandum with respect to any factual or legal issues developed during the oral argument. In doing so, the government also reserves its right to argue that any new claims or arguments are untimely or have otherwise been waived.

1

attempted murder of the author Salman Rushdie at the Chautauqua Institution on August 12, 2022. The indictment alleges that the defendant attempted to murder Mr. Rushdie to carry out a 1989 *fatwa* issued by Iran's Ayatollah Khomeini, which called for Mr. Rushdie's execution. Hizballah's Secretary General, Hassan Nasrallah, endorsed the *fatwa* in a 2006 speech.[2]

## ARGUMENT

**1. The Court should deny the defendant's suppression motion.**

The defendant makes several conclusory arguments in support of a motion to suppress evidence obtained pursuant to search warrants. As discussed below, each of the search warrants was sufficiently particularized. In the alternative, the executing agents acted in good faith. The Court should therefore deny the defendant's motion.

**A. Background**

As part of its investigation, the government obtained three sets of search warrants: (1) an August 20, 2022, set of warrants to search a number of electronic devices belonging to the defendant; (2) an October 11, 2022, set of warrants to search social media accounts belonging to the defendant and others; and (3) an April 14, 2023, set of warrant to search additional social media accounts belonging to the defendant and others.[3]

---

[2] The defendant was separately charged in Chautauqua County Court with attempted murder and assault. He was convicted of those charges and sentenced to 25 years' imprisonment.

[3] If requested, the government can provide these search warrants and supporting applications to the Court under seal. The government has provided each of these search warrant applications to the defendant in partially redacted form. As noted, the October 11, 2022, and April 14, 2023, search warrant applications sought authorization to search social media accounts belonging to individuals other than the defendant. The search warrant applications provided to the defendant contain redactions related to those third parties. The defendant does not have standing to challenge the third-party warrants. Thus, the government's response will address only the warrants for the defendant's devices and accounts.

## B. The search warrants were sufficiently particularized.

The defendant makes a conclusory argument that the search warrant applications were overbroad. *See* Dkt. 28 ¶¶ 4, 7. As discussed below, however, each of the search warrants exceeded the level of particularity required by the Fourth Amendment.

A search warrant must describe with particularity "the place to be searched and the persons or things to be seized." U.S. Const. amend. IV. The basic question in an overbreadth challenge is "whether the warrant authorized the search and seizure of items as to which there is no probable cause." *United States v. Dupree*, 781 F. Supp. 2d, 115, 148 n. 14 (E.D.N.Y. 2011) (internal quotation marks omitted). In other words, a warrant is overbroad if its "description of the objects to be seized . . . is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (internal quotation marks omitted). A warrant may also be overbroad if it does not "enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize." *United States v. George*, 975 F.2d 72, 75 (2d Cir. 1992). By contrast, a warrant is not overbroad simply because it authorizes the seizure of a large number of items; this argument is "fundamental[ly] flawed," because "it confuses a warrant's breadth with a lack of particularity." *United States v. Ulbricht*, 858 F.3d 71, 102 (2d Cir. 2017), *overruled on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018). "A warrant may be broad, in that it authorizes the government to search an identified location or object for a wide range of potentially relevant material, without violating the particularity requirement." *Id.*

These principles are no different just because the item to be searched is a social media account. It is well established that "the disclosure of broad categories of information, to be searched later with specific queries yielding information to be seized, is a practical necessity

3

when dealing with electronic evidence." *United States v. Westley*, 2018 WL 3448161, at *12 (D. Conn. July 17, 2018). In these circumstances, the overbreadth analysis does not apply to the entire social media account; instead, courts must "analyze[] separately" the list of items that the warrant authorizes agents to search for and seize. *Id.* The overbreadth question is, therefore, whether there is probable cause to search for and seize each of the items that the warrant identifies; if there is, the Fourth Amendment does not impose a limit on the volume of evidence that can be seized.

This is because the particularity requirement's purpose is to avoid leaving to "the unguided discretion of the officers executing the warrant the decision as to what items may be seized." *United States v. Riley*, 906 F.2d 841, 844 (2nd Cir. 1990). The particularity requirement, however, is not "so exacting" as to eliminate all discretion of the executing officers. *Id*. Instead, "[o]nce a category of seizable [items] is adequately described, with the description delineated in part by an illustrative list of seizable items, the Fourth Amendment is not violated because the officers executing the warrant must exercise some minimal judgment." *Id*. at 844-45. After all, a finding of probable cause is not predicated on the government's knowledge as to precisely how certain records are stored. *See id.* at 845 ("[A]llowing some latitude . . . simply recognizes the reality that few people keep documents of their criminal transactions in a folder marked 'drug records.'") Again, these principles apply no differently just because the item to be searched is in electronic form. *See Ulbricht*, 858 F.3d at 102 ("[I]t will often be impossible to identify in advance the words or phrases that will separate relevant files or documents before the search take place, because officers cannot readily anticipate how a suspect will store information related to the charged crimes . . . . [E]ven very simple codes can defeat a pre-planned word search.")

4

The warrants in this case satisfy the Fourth Amendment's particularity requirement because they were carefully tailored to the probable cause in each of the supporting affidavits. To begin, the warrants themselves authorized a search of the defendant's electronic devices and social media accounts for evidence of violations of, among of other crimes, 18 U.S.C. § 2339B (providing, attempting to provide, and conspiring to provide material support to a designated foreign terrorist organization); 18 U.S.C. § 2332b (acts of terrorism transcending national boundaries); 18 U.S.C. § 1951 (murder for hire); and § 371 (conspiracy). Each warrant's Attachment B then authorized agents to search for and seize specified categories of evidence such as:[4]

- Documents, publications, literature, records, information, audio recordings, video recordings, photographs, flags, and other audio, video, and physical propaganda concerning or related to Hizballah and/or the Islamic Revolutionary Guard Corps (IRGC);

- Documents, publications, literature, records, and information related to training, recruitment, membership, instruction, or taskings from, or carried out on behalf of, Hizballah and/or the IRGC;

- Travel documents and indicia of travel, including airline tickets, passports, visas, hotel records, travel itineraries, maps, photos, audio, and video recordings related to the defendant's travel to Lebanon;

---

[4] As it relates to the defendant's overbreadth challenge, each warrant's Attachment B is nearly identical.

- Evidence of the defendant's activities while in Lebanon, including the location(s) the defendant visited and the individuals he contacted, met, and/or interacted with;

- Communications between the defendant and any other person concerning or related to Hizballah, the IRGC, jihad, and/or fatwas;

- The identities of all people with whom the defendant communicated concerning Hizballah and/or the IRGC, including telephone numbers, addresses, photographs, videos, telegrams, notes, and other items reflecting names, addresses, telephone numbers, and communications;

- Documents, records, stored content, communications, messages and information relating to Salman Rushdie;

- Documents, records, stored content, communications, messages and information relating to Salman Rushdie's appearance at the Chautauqua Institution on August 12, 2022;

- Documents, records, stored content, communications, messages and information relating to the Chautauqua Institution, including its location and the layout of the grounds;

- Documents, records, stored content, communications, messages and information relating to a plan to attack and/or murder Salman Rushdie, including documents, records, stored content, communications, messages and information related to Salman Rushdie's location and schedule;

- Documents, records, stored content, communications, messages and information relating to a fatwa for the murder of Salman Rushdie;

- Documents, records, stored content, communications, messages and information relating to the acquisition, transfer, use and/or possession of knives, firearms, and other weapons;

- Documents, records, stored content, communications, messages and information relating to the defendant's motive for attempting to murder Salman Rushdie

The affidavits supporting each warrant provided a basis to search for, and seize, these categories of evidence. To start, the August 20, 2022, affidavit provided background on Hizballah and the defendant's attack on Mr. Rushdie. The affidavit then identified a variety of evidence showing that the defendant's attack was motivated by his loyalty to Hizballah and the Iranian regime. By way of example:

- On the day of his attack, the defendant carried a fraudulent driver's license that used the name "Hassan Mugniyah" and contained a number of references to Hizballah. As the search warrant affidavit observed, "[t]he Mughniyah name has significant meaning to Hizballah, as the former leader of Hizballah's External Security Organization (ESO) was Imad Mughniyah . . . . The ESO is a component of Hizballah responsible for the planning and coordination of intelligence, counterintelligence, and terrorist activities on behalf of Hizballah outside of Lebanon."

- The defendant traveled to Lebanon for a month in 2018, after which, according to his mother, he "changed a lot."

- During the execution of a search warrant in the defendant's bedroom,[5] law enforcement found a picture next to the defendant's bed depicting Iran's former Supreme Leader, Ruhollah Khomeini, and its current Supreme Leader, Ali Khamenei.

- The defendant kept a journal and a series of Post-It Notes describing his research on Mr. Rushdie; the best manner and location to kill him; and reasons for doing so, including that killing Mr. Rushdie would be a "[s]acrafice for Allah" and the "begining [sic] of Jihad."

- While searching several of the defendant's devices for evidence responsive to a state search warrant, agents found a variety of evidence relevant to the defendant's motive, including an image reaffirming "Ayatollah Khamenei's *fatwa* on Salman Rushdie's apostasy from Islam"; Hizballah propaganda; and a video with the text of the *fatwa* followed by a video of Hizballah's Secretary General, Hassan Nasrallah, endorsing the *fatwa*.

The October 11, 2022, warrants were likewise sufficiently linked to the probable cause in the supporting affidavit. The October 11, 2022, affidavit described the facts contained in the August 20, 2022, affidavit and included additional evidence found on the defendant's electronic devices as a result of the August 20, 2022, warrants. For example, the October 11, 2022, affidavit identified screenshots of Hizballah martyrs that appeared to have been taken by the defendant on the day he attempted to murder Mr. Rushdie. The affidavit then

---

[5] This warrant was authorized by a New Jersey state court judge to search for evidence related to the defendant's attempted murder of Mr. Rushdie. The warrant authorized law enforcement to search for, among other things, evidence of "[i]ntent to commit an attack on Salman Rushdie, including but not limited to animosity against . . . Rushdie."

explained how the defendant had used each of the social media accounts identified in the warrants to communicate about the crimes under investigation. For example, the defendant used these accounts to, among other things:

- Communicate with several Sheikhs about the teachings and religious authority of Iran's Supreme Leader;[6]

- Discuss the validity of the *fatwa* against Mr. Rushdie;

- Send a copy of his will to an Imam several weeks before his attack on Mr. Rushdie;

- Speak with an Iran-based individual about the logistics of killing Mr. Rushdie; and

- Purchase bus tickets to travel to Buffalo, New York, to carry out the attack.

Finally, the April 14, 2023, warrants similarly linked a number of the defendant's social media accounts with the crimes being investigated. Indeed, the 87-page affidavit supporting these warrants described in great detail why there was probable cause to believe that each of the accounts to be searched contained evidence of the crimes under investigation.

Taken together, the facts described in each of the search warrant affidavits provided probable cause to believe that the defendant had attempted to murder Mr. Rushdie to carry out a *fatwa*; that the defendant supported Hizballah and the Iranian regime; that, when he attempted to carry out the *fatwa*, he believed he was doing so on behalf of Hizballah; and that the defendant extensively used social media to discuss and consume propaganda concerning Mr. Rushdie, Hizballah, and the Iranian regime.

---

[6] As noted in the affidavit, one of the Sheikhs with whom the defendant communicated made statements in a YouTube video supporting Mr. Rushdie's death.

Against that backdrop, each warrant allowed agents to search for and seize a discrete category of items that was linked to the probable cause in each supporting affidavit. The warrants, for example, authorized agents to search for and seize communications and records related to Hizballah, Mr. Rushdie, the *fatwa*, and the defendant's activities in Lebanon. Indeed, each warrant contained a far more detailed description of evidence to seize than is constitutionally required. *See Westley*, 2018 WL 3448161 at *13 (collecting cases involving social media search warrants "authorizing seizure of broad categories of information of information from Facebook accounts"). The warrants therefore contained exactly the sort of "illustrative list of seizable items" that the Fourth Amendment requires. *Riley*, 906 F.2d at 844-45.

The defendant's argument to the contrary appears to suggest that the warrants were overbroad because they authorized the seizure of a potentially large volume of data. But as noted, that argument "confuses a warrant's breadth with a lack of particularity." *Ulbricht*, 858 F.3d at 102. *Cf. United States v. Zaso*, 22-CR-74-LJV, 2023 WL 4011149, at *6 (W.D.N.Y. June 15, 2023) ("[T]here is nothing 'overbroad' about a warrant that details and breaks down categories of materials, all of which relate to drug dealing in some way.") The Fourth Amendment requires particularity; it does not impose an artificial limit on the amount of evidence agents can search for and seize. Because the warrants in this case were sufficiently particularized, the Court should deny the defendant's suppression motion.

**C. In the alternative, the executing agents relied on the warrants in good faith.**

If the Court concludes that the search warrants were insufficiently particularized, the Court should nonetheless not recommend suppression because the executing agents acted in good faith.

"Suppression of evidence . . . has always been [a court's] last resort, not [its] first impulse." *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (quoting *United States v. Leon*, 468 U.S. 897, 907 (1984)). This reluctance stems from the fact that the exclusionary rule "exacts a heavy toll on both the judicial system and society at large," because it "almost always requires courts to ignore reliable, trustworthy evidence bearing on guilt or innocence," where the "bottom-line effect, in many cases, is to suppress the truth and set the criminal loose in the community without punishment." *Davis v. United States*, 564 U.S. 229, 237 (2011).

As a result, "courts have recognized that evidence obtained by officers in objectively reasonable reliance on a warrant subsequently invalidated by a reviewing court is not generally subject to exclusion." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015) (quotation marks omitted). This principle is rooted in the fact that the exclusionary rule is meant to deter police misconduct. Thus, "[w]hen an officer genuinely believes that he has obtained a valid warrant from a magistrate and executes that warrant in good faith, there is no conscious violation of the Fourth Amendment 'and thus nothing to deter.'" *Id.* (quoting *United States v. Leon*, 468 U.S. 897, 920-21 (1984)).

The exclusionary rule does not, then, require suppression unless reliance on the warrant would be "objectively [un]reasonable." *Id.* at 118. In general, situations where reliance would be objectively unreasonable are: "(1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (quotation marks omitted).

11

As this list suggests, exclusion is generally appropriate in only a handful of situations where "police conduct [has been] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring v. United States*, 555 U.S. 135, 144 (2009). Such conduct is typically "deliberate, reckless, . . . grossly negligent conduct, or in some circumstances recurring or systemic negligence." *Id.* This high burden is not surprising given that "the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." *Id.* at 143-44 (collecting cases).

Nothing about the warrants in this case remotely approaches these situations. As discussed above, the warrants provided probable cause to believe that the defendant had attempted to murder Mr. Rushdie to carry out a *fatwa* that he believed had been endorsed by Hizballah. And the warrants authorized agents to search the defendant's electronic devices and social media accounts for a discrete list of specified items tied to that probable cause. Even if the Court were to find that the warrants were somehow defective, those deficiencies would not be so egregious as to justify the harsh remedy of suppression.

Indeed, it is difficult to identify how the warrants could have been more particularized. That shows that this is not a case where "the officers' conduct was 'sufficiently deliberate that exclusion can meaningfully deter it.'" *United States v. Rosa*, 626 F.3d 56, 66 (2d Cir. 2010) (quoting *Herring v. United States*, 555 U.S. 135, 144 (2009)). Nor is this a case where the officers' conduct was "'sufficiently culpable that such deterrence is worth the price paid by the justice system.'" *Id.* To the contrary, suppression would preclude evidence of the defendant's motivation in a case where his motivation and intent are critical, all on the

thinnest of technicalities. The Fourth Amendment does not require this. The Court should therefore deny the defendant's suppression motion.

### D. The defendant has not met his burden for a *Franks* hearing.

The defendant requests a *Franks* hearing based on the conclusory allegation that "the search warrant applications contain information that the Government knew or should have known to be false at the time it was offered to the Court." Dkt. 28 ¶ 6.

"To be entitled to a *Franks* hearing, a defendant must make 'a substantial preliminary showing' of (1) falsity, 'that a false statement . . . was included by the affiant in the warrant affidavit,' (2) knowledge, that the affiant made the allegedly false statement 'knowingly and intentionally, or with reckless disregard for the truth,' and (3) materiality, that 'the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Sandalo*, 70 F.4th 77, 85 (2d Cir. 2023) (quoting *Franks v. Delawre*, 438 U.S. 154, 155-56 (1978)). This burden is a "heavy one," requiring "more than a mere conclusory showing." *Id.* at 86. The defendant, however, identifies no allegedly false statement in any of the search warrant affidavits. Because he only makes a conclusory showing that he is entitled to a *Franks* hearing, the Court should deny his motion.

### 2.   The Court should deny the defendant's discovery motion as moot.

To date, the government has complied with Rule 16 and has made available for inspection (or will make available, upon request) all items falling within the scope Rule 16.[7]

---

[7] Certain items of Rule 16 discovery are, or were, classified in some form. To the extent possible, classified discovery is being declassified so that it can more easily be produced to the defendant; in

To the extent that it has not already done so, the government notifies the defendant pursuant to Rule 12(b)(4)(B) that it intends to use all evidence that it has produced in its case-in-chief.

The defendant's request for the disclosure of expert witnesses is premature, as the government has not yet designated any experts for this case. In the event that the government does designate expert witnesses, it will comply with its discovery obligations under Rule 16(a)(1)(G).

With respect to *Jencks* material, *see* Dkt. 28 ¶¶ 27-29, the government has voluntarily disclosed certain *Jencks* material. The *Jencks* Act, however, does not require disclosure of a witness's statements until after the witness testifies at trial. *See* 18 U.S.C. § 3500; *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001) ("[A] District Court's power to order pretrial disclosure is constrained by the *Jencks* Act."). The government will, however, produce additional *Jencks* material sufficiently in advance of trial to allow the defendant to make use of it.

Finally, the defendant seeks production of materials under the authority of *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Dkt. 28 ¶¶ 13-19. The government acknowledges its affirmative continuing duty to provide the defendant with exculpatory evidence, as well as evidence that the defendant might use to impeach the government's witnesses at trial. *See United States v. Bagley*, 473 U.S. 667 (1985); *Giglio v. United States*, 405 U.S. 150 (1972). The government believes it has already disclosed all non-classified *Brady* material currently in the

---

accordance with its continuing discovery obligations, the government is continuing to produce declassified discovery. To the extent that discovery cannot be declassified, the government anticipates filing a motion with District Judge Richard J. Arcara pursuant to the Classified Information Procedures Act. *See* 18 U.S.C. app. 3.

government's possession. Should the government identity any additional *Brady* material, the government acknowledges its duty to provide that material to the defendant.

### 3. The Court should deny the defendant's motions pursuant to Rules of Evidence 404(b), 608, and 609.

The defendant next asks the Court to compel the disclosure of evidence pursuant to Federal Rules of Evidence 404(b), 608, and 609. *See* Dkt. 28 ¶¶ 20-26.

First, if the defendant testifies, the government reserves its right to impeach him pursuant to Rule 609 with his 2025 conviction in Chautauqua County Court for the attempted murder of Mr. Rushdie.

Second, the defendant's Rule 404(b) motion is premature. Rule 404(b) requires the government to provide a defendant with written notice describing other-acts evidence the government intends to introduce, as well as the basis for introducing the evidence. *See* Fed. R. Evid. 404(b)(3). The government has not yet identified evidence that it will seek to introduce pursuant to Rule 404(b), but if the government does so, it will provide notice of such evidence well in advance of trial. Trial, however, has not yet been scheduled. The defendant's motion should therefore be denied as premature. *See United States v. Birkett*, No. 99 CR 338(RWS), 1999 WL 689992, *6 (S.D.N.Y. Sept. 2, 1999) (denying as premature defendants' motion for 404(b) evidence).

Third, a defendant "is not entitled [under Rule 608(b)] to pretrial disclosure of additional evidence the government intends to use to cross-examine him should be testify at trial." *United States v. Jimenez*, 16-CR-60-RJA-MJR, 2016 WL 11268702, at *4 (W.D.N.Y. Nov. 29, 2016). *See, e.g.*, *United States v. Tomblin*, 46 F.3d 1369, 1388 n.51 (5th Cir. 1995) (indicating that Rule 608(b) does not require advance notice of the prosecutor's intent to use

specific instances of defendant's conduct to impeach the defendant when he testifies). The government will therefore provide any impeachment evidence when directed to do so by the district court.

### 4.    The government agrees to preserve rough notes.

The defendant next seeks an order requiring government agents to preserve their rough notes. *See* Dkt. 28 ¶¶ 30-31. The retention of agents' notes is not required so long as the notes are subsequently incorporated into a final report. *United States v. Elusma*, 849 F.2d 76, 79 (2d Cir. 1988); *United States v. Sanchez*, 635 F.2d 47, 66 n.20 (2d Cir. 1980); *United States v. Percan*, 1999 WL 13040 (S.D.N.Y. 1999); *United States v. Hilario*, 1990 WL 106831 (S.D.N.Y. 1999). Moreover, even if retained, rough notes are not discoverable, even as *Jencks* Act material. *United States v. Koskerides*, 877 F.2d 1129, 1133 (2d Cir. 1989). The government, however, does not object to this motion.

### 5.    The defendant has not established good cause to file additional motions.

Finally, the defendant seeks leave to make additional motions. *See* Dkt. 28 ¶¶ 33-35. Federal Rule of Criminal Procedure 12(b)(3) requires a defendant to make a variety of requests "by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." A motion that is not made by this deadline is untimely unless the defendant "shows good cause." Fed. R. Crim. P. 12(c)(3).

The government does not object to this request to the extent (1) that any future motions are not based on information or evidence currently available to the defendant; and (2) that the defendant makes a showing of good cause to bring any future motions that are based on information or evidence currently available to him. *See United States v. Gerace*, 19-CR-227,

16

2923 WL 1775754 (W.D.N.Y. Feb. 6, 2023), *adopting Report and Recommendation*, 2022 WL 19003139 (denying motion to file untimely suppression motion for failure to establish "good cause"). In this regard, the government notes that it has provided the defendant with substantial discovery beginning in November 2024. Thus, to the extent that the defendant files motions related to discovery that has been in his possession since that time, the defendant will likely be unable to establish good cause.

**6.    The Court should grant the government's cross-motion for reciprocal discovery.**

The government moves for reciprocal discovery pursuant to Federal Rule of Criminal Procedure 16(b). The term "defendant's case-in-chief at trial," as used in Rule 16(b), is not limited to any affirmative case a defendant may choose to put on after the government rests. Rule 16(b) "requires [a defendant] to identify all non-impeachment exhibits [he] intend[s] to use in [his] defense at trial, whether the exhibits will be introduced through a government witness or a witness called by a Defendant." *United States v. Napout*, 15-CR-252(PKC), 2017 WL 6375729, at *7 (E.D.N.Y. Dec. 12, 2017) (citing cases for proposition that "almost every district court to consider this issue" has agreed that Rule 16(b)'s disclosure requirement is not limited to evidence defendant intends to introduce as part of affirmative case).

The government also requests that the defendant permit the government to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case or copies thereof within the possession or control of the defendant which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness' testimony. Finally, the government requests,

consistent with district court's scheduling order, that the defendant provide a summary of any testimony that he intends to use under Federal Rules of Evidence 702, 703, or 705.

## **CONCLUSION**

For the reasons set forth above, the Court should deny the defendant's pretrial motions and grant the government's cross motion for reciprocal discovery.

DATED:  Buffalo, New York, June 10, 2025.


Respectfully submitted,

MICHAEL DIGIACOMO
United States Attorney

BY: ***/s/ TIMOTHY C. LYNCH***
TIMOTHY C. LYNCH
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5846
Timothy.Lynch@usdoj.gov

BY: ***/s/ CHARLES M. KRULY***
CHARLES M. KRLY
Assistant U.S. Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
(716) 843-5838
Charles.Kruly@usdoj.gov